# 18-2831

*To Be Argued by:*
Charles D. Cole, Jr.

## United States Court of Appeals
FOR THE SECOND CIRCUIT

EUGENE SCALIA, ESQ., Secretary of Labor,

*Petitioner,*

*against*

ANGELICA TEXTILE SERVICES, INC.,

*Respondent.*

PETITION FOR REVIEW FROM THE OCCUPATIONAL
SAFETY AND HEALTH REVIEW COMMISSION

# BRIEF OF COURT-APPOINTED AMICUS CURIAE SUPPORTING THE COMMISSION

CHARLES D. COLE, JR.
NEWMAN MYERS KREINES HARRIS, P.C.
40 Wall Street
New York, New York 10005-1335
212-619-4350
dcole@newmanmyers.com

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Interest of Amicus Curiae . . . . . . . . . . . . . . . . . . . . . . . . . 1

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Issues Presented for Review . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Course of Proceedings and Disposition before the Occupational Safety and Health Review Commission . . . . . . 4

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

The petition should be dismissed . . . . . . . . . . . . . . . . . . . . 12

The Secretary's petition, which seeks a larger financial penalty, is moot and does not present a case or controversy because Angelica Textile has received a discharge in bankruptcy . . . . . . . . . . . . . . . . . . . 12

The petition should be denied . . . . . . . . . . . . . . . . . . . . . . 18

The Commission's finding that the violations were not repeated is supported by substantial evidence on the record considered as a whole . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**Cases**

A. Shonbek & Co. v. Donovan, 646 F.2d 799 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Auer v. Robbins, 519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . 26

Bianchi Trison Corp. v. Chao, 409 F.3d 196 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Caterpillar, Inc. v. Herman, 154 F.3d 400 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Chevron, U.S.A, Inc. v. NRDC, Inc., 467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Cty. of Suffolk v. Sebelius, 605 F.3d 135 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

First Unum Life Ins. Co. v. Wulah, 506 Fed. App'x 1 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 15

Fuller v. Bd. of Immigration Appeals, 702 F.3d 83 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 14

Green v. Mazzucca, 377 F.3d 182 (2d Cir. 2004) . . . . . . . . . . 14

Knox v. SEIU, Local 1000, 567 U.S. 298 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martin v. OSHRC, 499 U.S. 144 (1991) . . . . . . . . . . . . . . . . 26

Martin v. OSHRC, 941 F.2d 1051
(10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mission Prod. Holdings v. Tempnology, LLC,
139 S. Ct. 1652 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . 14

NLRB v. Starbucks Corp., 679 F.3d 70
(2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Porter Bridge Loan Co. v. Northrup, 566
Fed App'x 753 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . 15

Potlatch Corp., 7 BNA OSHC 1061
(No. 16183, 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Reich v. OSHRC, 102 F.3d 1200
(11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Solis v. Loretto-Oswego Residential Healthcare
Facility, 692 F.3d 65 (2d Cir. 2012) . . . . . . . . . . . . . . . . . 18

Stachowiak v. Comm'r, 93 Fed. App'x 809
(6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Terry v. Inc. Vill. of Patchogue, 826 F.3d 631
(2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

W. Waterproofing Co. v. Marshall, 576 F.2d 139
(8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Sanchez-Gomez, 138 S. Ct.
1532 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes, Regulations, and Court Rules**

Occupational Safety and Health Act of 1970,
Pub. L. No. 91-596, 84 Stat. 1590 . . . . . . . . . . . . . . . . . passim

§ 10(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

§ 11(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22, 27

§ 11(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 17(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 17(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 1141(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . 11, 17

29 U.S.C. § 659(c) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

29 U.S.C. § 660(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22, 27

29 U.S.C. § 660(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 666(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29 U.S.C. § 666(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29 C.F.R. § 1910.146 . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 C.F.R. § 1910.146(c)(4) . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. § 1910.146(d)(3) . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. § 1910.147(c)(4)(ii) . . . . . . . . . . . . . . . . . . . 6, 9

Fed. R. App. P. 28(a)(8)(A). . . . . . . . . . . . . . . . . . . . . . 13

**Other Authorities**

BNA, Occupational Safety and Health Law
(4th ed. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Steven A. Childress & Martha S. Davis,
Federal Standards of Review (4th ed. 2010) . . . . . . . . . . . . . . 22, 23

## INTEREST OF AMICUS CURIAE

This brief is submitted in response to the court's order appointing counsel to brief and argue this case as amicus curiae in support of the order of the Occupational Safety and Health Review Commission.

## PRELIMINARY STATEMENT

The Secretary of Labor's petition to review an order of the Occupational Safety and Health Review Commission should be dismissed as moot. The sole relief sought by the Secretary in his petition is reclassifying two OSHA violations from serious to repeated. Because the only consequence of the reclassification is an increased penalty for which the employer already has received a discharge in bankruptcy, the petition is moot and should be dismissed.

Moreover, the Commission's order classifying the violations as serious—and not as repeated—is a finding of fact supported by substantial evidence on the record considered as a whole. The violations are not repeated because, even though the violations involve the same OSHA standard as earlier violations at a different location, they are not substantially similar. The earlier violations involved a complete failure by the employer to have in place procedures that

comply with the OSHA standards. The later violations—those on review—involve, as the Commission found, minimal deficiencies after the employer had taken steps to comply with the OSHA standards.

## JURISDICTIONAL STATEMENT

The Secretary of Labor petitions for review of a decision and order of the Occupational Safety and Health Review Commission involving alleged violations at Angelica Textile Services in Ballston Spa, New York. *Angelica Textile Servs.*, 27 BNA OSHC 1246 (No. 08-1774, 2018). The Commission's order is dated June 24, 2018. SPA 23, 27 BNA OSHC at 1259. But it was not filed until July 24, 2018. Certified List of Relevant Docket Entries [Dkt. No. 17–2]. The Secretary filed his petition on September 21, 2018. Docketing Notice [Dkt. No. 1–1]. The Secretary's petition is timely because it was filed within 60 days in the court of appeals for the circuit in which the alleged violations occurred. *See* Occupational Safety and Health Act of 1970, Pub. L. No. 91-596, § 11(b), 84 Stat. 1590, 1603 (codified at 29 U.S.C. § 660(b)).

As will be further explained in part one of the argument, this court does not have subject-matter jurisdiction over the petition

because it does not present a case or controversy. Angelica Textile Services sought reorganization under chapter 11 while the matter was pending before the Commission. As part of its reorganization, the bankruptcy court discharged Angelica Textile's liabilities (including the OSHA penalty) and sold its assets. Because this court's decision will not result in the Secretary's collecting a larger penalty, any relief granted will be illusory. And so the Secretary's petition is moot.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Under the Occupational Safety and Health Act, as applied by the Commission, a repeated violation arises when the employer violates the same OSHA standard as before and the violations are substantially similar. In this instance, the employer violates the same standards at its Edison and Ballston Spa facilities. But the Edison violations involve a "nearly complete failure to comply with the standards," and the Ballston Spa violations involve "only minimal deficiencies." Are the later violations repeated?

No. The Commission's finding that the violations are not substantially similar is supported by substantial evidence on the record

considered as a whole. The Commission correctly found that the violations were not repeated.

The only consequence of a repeated violation is a larger penalty than a serious violation. And, during the administrative proceeding, the employer sought reorganization and obtained a discharge in bankruptcy. Is the Secretary's petition, which seeks to reclassify the violations as repeated, moot?

Yes. Because the only consequence of the change from a serious to a repeated violation is an increase in the penalty for which the employer already has received a discharge, the Secretary will not obtain any relief in this review. The petition is moot.

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition before the Occupational Safety and Health Review Commission

The Secretary cited Angelica Textile Services under the Occupational Safety and Health Act alleging ten serious and four repeated violations. Angelica Textile Services challenged the citation before an administrative law judge. SPA38.

On review, a divided Occupational Safety and Health Review Commission affirmed two of the violations, classified them as

serious, and assessed a grouped penalty. SPA22–SPA23, 27 BNA OSHC at 1259. The Commission rejected the Secretary's argument that the two violations should be classified as repeated and thus subject to a larger penalty. SPA22, 27 BNA OSHC at 1256.

The Secretary then petitioned for review. SPA78. When the employer, Angelica Textile, which had entered bankruptcy, defaulted in submitting a brief, the court appointed amicus to argue in support of the Commission's order. Order [Dkt. No. 117].

**Statement of Facts**

The facts are set out in the decision of the Commission, familiarity with which is assumed. As is germane to this review, which involves only whether the two violations at separate locations should be classified as serious (what the Commission found) or as repeated (what the Secretary argues), the historical facts are not disputed.

Angelica Textile Services ran a commercial laundry. The laundry included large commercial washing machines—called continuous batch washers or tunnel washers—that employees would enter from time to time to clear clogged laundry or to make repairs. SPA2, 27 BNA OSHC at 1247.

*Angelica Textile Services—Edison Citations*

In 2004, the Secretary cited Angelica Textile's Edison, New Jersey facility with violating the OSHA standards because it "did not develop and implement a written permit space entry program that complied with 29 C.F.R. 1910.146" for when employees would enter the washers. APP662. Among the deficiencies noted by the Secretary were:

> 1) failure to test the atmosphere of the space(s) for air contaminant and specify acceptable entry conditions,
>
> 2) failure to isolate the space(s) from thermal and mechanical energy sources,
>
> 3) failure to control entry through use of written authorization permits,
>
> 4) failure to provide training to all employee(s) who enter confined spaces, or act as attendants, and
>
> 5) failure to provide means of rescue/retrieval in event of emergency.

APP662.

The Secretary also cited Angelica Textile Services with violating 29 C.F.R. § 1910.147(c)(4)(ii) because its "energy control procedures did not clearly and specifically outline the scope, purpose,

authorization, rules, and techniques to be utilized for the control of hazardous energy." APP669.

> a) Production area. Written procedures for lockout/tagout were not site specific. Procedures shall include at a minimum:
>
> Types of machines requiring maintenance/service
>
> Types of energy sources for those machines
>
> Location of those energy sources
>
> Means for isolating specific energy sources

APP669.

Angelica Textile settled the Edison citations with the Secretary. As part of the settlement, the parties substituted a violation of § 1910.146(d)(3) for the cited violation of § 1910.146(c)(4). APP96 (stipulated settlement). Angelica Textile agreed to step up its safety program, implement a confined-space program for when employees enter tunnel washers, and pay a reduced penalty. APP96–APP100.

*Angelica Textile Services—Ballston Spa Citations*

Over 4 years later, the Secretary cited Angelica Textile's Ballston Spa, New York facility under 29 C.F.R. § 1910.146(d)(3) because it "did not develop and implement the means, procedures, and

practices necessary for safe permit space entry operations." APP3. Unlike the Edison citation, which was based on Angelica Textile's not having "develop[ed] and implement[ed] a written space entry program," this citation, by contrast, focused on deficiencies in Angelica Textile's permit-required confined-space program. *Compare* APP662 (Edison citation) *with* APP3 (Ballston Spa citation). These deficiencies were:

> (a) On or about June 12, 2008, in the facility, the confined space entry procedure for the continuous batch washer in section 5.8 required that entry not be permitted into the chamber with a temperature above 120 degrees F. However, the program does not address how to determine if this temperature was being exceeded.
>
> (b) On or about June 12, 2008, in the facility, the confined space entry procedure for the continuous batch washer in section 5.13 required the entrants verify that the power had been successfully shut off. However, the means to verify this was not specified in this program or the lockout/tagout program.
>
> (c) On or about June 12, 2008, in the facility, the confined space entry procedure for the continuous batch washer in section 5.19 required the entrants to verify that valves have been successfully locked out. The permit

required confined space standard requires that valves will be considered isolated only by using one of the following techniques: blanking or blinding; misaligning or removing sections of lines, pipes or ducts; and use of double block and bleed system.

(d) On or about June 12, 2008, in the facility, the confined space entry procedure for the continuous batch washer in section 5.23 required periodic testing of the space but the frequency of this testing was not specified.

(e) On or about June 12, 2008, in the facility, the confined space program does not address the mechanical and gas hazards related to entering the Milnor dryers and fireboxes located under the dryers.

APP3.

The Secretary also cited Angelica Textile's Ballston Spa facility under 29 C.F.R. § 1910.147(c)(4)(ii) because "[t]he energy control procedures did not clearly and specifically outline the scope, purpose, authorization, rules, and techniques to be utilized for the control of hazardous energy." APP12. But—unlike the earlier citation for the Edison facility, which turned on the absence of site-specific procedures, APP669—this citation was aimed at the existing procedures

not identifying the specific steps that service and maintenance employees were required to take to control hazardous energy.

> (a) On or about June 12, 2008, in the facility, the specific lockout procedures for equipment such as but not limited to dryers, continuous batch washers, the co-bucket, the press in the shuttle area and ironers failed to clearly identify all of the specific steps to be followed by employees performing servicing and maintenance to control hazardous energy.

APP12.

The Commission affirmed both citations as serious. *See* SPA22, 27 BNA OSHC at 1259.

*Angelica Textile's Bankruptcy*

While the case was pending before the Commission, Angelica Textile filed a voluntary petition for relief under chapter 11 in the United States Bankruptcy Court for the Southern District of New York. *See In re Reid Corp.*, No. 17-10870 (S.D.N.Y. Bankr. Apr. 3, 2017). The bankruptcy court approved the sale of Angelica Textile's assets. Order Approving Purchase Agreement [S.D.N.Y. Bankr. Dkt. No. 363 (June 23, 2017)]. Angelica Textile submitted a reorganization plan, which provided for the distribution of its assets and the payment

of claims. Third Amended Joint Chapter 11 Plan of Debtors and Debtors in Possession [S.D.N.Y. Bankr. Dkt. No. 492 (Aug. 14, 2017)]. The bankruptcy court approved the plan. Confirmation Order [Bankr. Dkt. No. 544 (Aug. 31, 2017)]. By statute, the bankruptcy court's confirming the reorganization plan discharged Angelica Textile "from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A).

The bankruptcy court's order contains a section pertaining to liabilities to the United States. That section confirms Angelica Textile's discharge in bankruptcy. It reinforces the discharge of liabilities arising before the confirmation date by clarifying that the order does not discharge a claim of the United States arising after the confirmation date or a liability under regulatory statutes arising after the confirmation date. Confirmation Order ¶ P [S.D.N.Y. Bankr. Dkt. No. 544 (Aug. 31, 2017)].

## SUMMARY OF ARGUMENT

The Secretary's petition should be dismissed as moot. The only relief sought by the Secretary is reclassifying two OSHA violations from serious to repeated, which will result in an increased penalty. But

the Secretary won't collect that increased penalty or, for that matter, any penalty because Angelica Textile received a discharge in bankruptcy. And because the Secretary won't obtain relief, his petition is moot and should be dismissed.

Moreover, the Commission's order classifying the violations as serious, and not as repeated, is a finding of fact that is supported by substantial evidence on the record and is thus conclusive. The Commission's order is based on the violations on review not being substantially similar to the earlier violations of the same OSHA standards. They are not substantially similar because the earlier violations involved a complete disregard of the OSHA standards. The later violations did not. Thus, on the merits, the Secretary's petition should be denied.

## ARGUMENT

## THE PETITION SHOULD BE DISMISSED

- **The Secretary's petition, which seeks a larger financial penalty, is moot and does not present a case or controversy because Angelica Textile has received a discharge in bankruptcy.**

The easiest way to see why the case is moot is to look at the relief sought in the Secretary's brief, which limits the issues on

review. *See* Fed. R. App. P. 28(a)(8)(A); *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 632 (2d Cir. 2016). The Secretary asks that the court "remand this case to the Commission with the direction that the citations be affirmed as repeated." Brief of Petitioner at 48. The only consequence of classifying the citations as repeated—instead of serious—is that the Commission could then assess a higher monetary penalty. *Compare* OSH Act § 17(a), 29 U.S.C. § 666(a) ("repeatedly") *with* OSH Act 17(b), 29 U.S.C. § 666(b) ("serious"). In sum, the Secretary seeks nothing more than an increased penalty against the employer, Angelica Textile.

But, as has been seen, Angelica Textile entered bankruptcy and received a discharge. And so any penalty, whether for a serious or for a repeated violation, will not be collected.

This court's subject-matter jurisdiction derives from Article III, which requires a justiciable case or controversy. *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013). "A number of justiciability doctrines govern the contours of this power." *Cty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010). One of the doctrines "is mootness, which concerns when and whether a case is

'live.'" 605 F.3d at 140. "A case that becomes moot at any point during the proceedings is no longer a Case or Controversy for the purpose of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (internal quotation marks omitted).

"The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Green v. Mazzucca*, 377 F.3d 182, 183 (2d Cir. 2004). Seen in this way, a case is moot when it is impossible for a court to grant any effective relief to the prevailing party. *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012). If it is "impossible . . . to grant any effectual relief whatever to a prevailing party," the court "must dismiss the case, rather than issue an advisory opinion." *Fuller v. Bd. of Immigration Appeals*, 702 F.3d 83, 86 (2d Cir. 2012).

As might be imagined, "nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). That's because "[i]f there is any chance of money changing hands," the action remains live. 139 S. Ct. at 1660. But the

opposite likewise is true. If there is no prospect of effective recovery, the action is moot.

Sure enough, cases that become moot because a party has entered bankruptcy don't arise all that often. That's because most litigants don't chase empty pockets. Yet this court has recognized that when a litigant has obtained a discharge in bankruptcy, that much of the case relating to the discharged claim is moot and should be dismissed. *See First Unum Life Ins. Co. v. Wulah*, 506 Fed. App'x 1, 2 (2d Cir. 2012). Other courts of appeals have reached the same result. *See, e.g.*, *Porter Bridge Loan Co. v. Northrup*, 566 Fed App'x 753, 755 (10th Cir. 2014) ("Dr. Northrup received a discharge in bankruptcy. Accordingly, this court is prevented from granting him any effective relief . . . . Therefore, his appeal is moot and will be dismissed."); *Stachowiak v. Comm'r*, 93 Fed. App'x 809, 809 (6th Cir. 2004) ("The discharge in bankruptcy . . . mooted the issue of the petitioner's income tax liability for 1996. It is ordered that the appeal is dismissed.").

Angelica Textile's discharge in bankruptcy prevents the Secretary from obtaining relief on his petition, which seeks to reclassify violations and thus increase a penalty that already has been discharged.

No matter what this court does, the Secretary won't collect a larger penalty. And because the Secretary won't collect a larger penalty, the petition is moot and should be dismissed.

* * *

The decisions on which the Secretary relies are not to the contrary. The Secretary's petition in the Tenth Circuit case was live because, even though the employer had sought reorganization under chapter 11, the bankruptcy court had not granted a discharge. *Martin v. OSHRC*, 941 F.2d 1051, 1053 (10th Cir. 1991). Moreover, the Secretary sought prospective enforcement of a safety violation, and the employer could not assure the court that its operations would not resume. 941 F.2d at 1054. In this case, by contrast, Angelica Textile has a discharge, and its assets have been sold.

Nor is this an instance, as in *Martin*, in which the court may review a citation with a monetary penalty and then not enforce it. *See* 941 F.2d at 1054 (collecting cases). In *Martin*, the Secretary asked the court of appeals to vacate the Commission's order vacating the citation, which the employer opposed. The case was live because a decision in the Secretary's favor would have resulted in the violation

being reinstated. In this case, by contrast, the employer has not petitioned for review, and so the violations found by the Commission are not at issue and will not be vacated.

The Eleventh Circuit case on which the Secretary relies did not involve a discharge in bankruptcy. In that case, the Commission had denied review of an ALJ's decision dismissing the citation as moot based on the employer's having stated that all employees had been released and the business had been shut down. The court of appeals granted the petition and vacated the Commission's order. *Reich v. OSHRC*, 102 F.3d 1200, 1201–02 (11th Cir. 1997). It explained that monetary penalties—unlike injunctions—don't become moot by an employer's voluntary shutting its business. 102 F.3d 1201–02.

In this case, the bankruptcy court confirmed Angelica Textile's reorganization plan. That order resulted in Angelica Textile's discharge. *See* 11 U.S.C. § 1141(d)(1)(A). Consequently, the Secretary is prevented from getting the relief he seeks: an increased monetary penalty. The petition, which seeks only an increased penalty, is thus moot and should be dismissed.

In the alternative, . . .

## THE PETITION SHOULD BE DENIED

- **The Commission's finding that the violations were not repeated is supported by substantial evidence on the record considered as a whole.**

Whether a violation is serious, as the Commission found in this case, or is repeated, as the Secretary argues in his brief, is a question of fact. *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir. 2005) ("whether a violation was willful is a question of fact"); *see, e.g.*, *W. Waterproofing Co. v. Marshall*, 576 F.2d 139, 142 (8th Cir. 1978) ("principal issue[] in this appeal [is] whether there was substantial evidence to support the finding of the Commission that Western willfully violated the lashing standard").

Under the Act, the Commission supports its orders with "findings of fact," which, "if supported by substantial evidence on the record considered as a whole, shall be conclusive." OSH Act §§ 10(c), 11(a), 29 U.S.C. §§ 659(c), 660(a). This court must, under the substantial-evidence standard, uphold the Commission's finding that the violations are serious, and not repeated, "so long as 'a reasonable mind might accept' the evidence in question as 'adequate to support' it." *Solis v. Loretto-Oswego Residential Healthcare Facility*, 692 F.3d 65,

77 (2d Cir. 2012) (quoting *NLRB v. Starbucks Corp.*, 679 F.3d 70, 77 (2d Cir. 2012)). And, as will be explained, the Commission's finding is one that a reasonable mind could reach.

The Commission applied its long-standing burden-shifting framework for whether a violation should be labeled as repeated. Under that standard, a violation is repeated "if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." *Potlatch Corp.*, 7 BNA OSHC 1061, 1063 (No. 16183, 1979). The Secretary makes out his prima-facie case of substantial similarity by showing that the past and present violations are for failure to comply with the same standard. SPA15, 27 BNA OSHC at 1254 (citing *Potlatch Corp.*, 7 BNA OSHC at 1063).

Because "two of Angelica's prior violations were cited under the same standards as the violations" at Ballston Spa, the Commission correctly found that the Secretary had made a "prima facie showing of substantial similarity." SPA15–SPA16, 27 BNA OSHC at 1255. Thus, the burden shifted to the employer, Angelica Textile, to produce "evidence of the disparate conditions and hazards associated

with these violations of the same standard." SPA16, 27 BNA OSHC at 1255 (citing *Potlatch Corp.*, 7 BNA OSHC at 1063).

The Commission then found "that the violations at Angelica's Ballston Spa facility were not 'substantially similar' to those at Angelica's Edison facility." SPA16, 27 BNA OSHC at 1255. The Edison violations pointed up deficiencies in the permit-required confined-space and in the lockout/tagout procedures that were so pervasive as "to render those procedures substantially ineffective." SPA17, 27 BNA OSHC at 1256. As a result, Angelica Textile had to purchase a gas monitor and train employees how to use it, develop and implement lockout/tagout procedures for the tunnel washers, develop a customized entry permit, provide training for employees, and modify the entry permit to include notifying the local fire department. SPA 17 n.20, 27 BNA OSHC at 1256 n.20. But that was not the case in Ballston Spa.

Turning first to the permit-required confined-space procedures, the Commission said that the Edison citation stemmed from the procedures in place being so deficient that Angelica Textile "lacked the means necessary to address confined space hazards in the CBWs and

protect employees entering those spaces." SPA17, 27 BNA OSHC at 1256. Angelica Textile then put in place "a comprehensive procedure for employee entry into the washer modules." SPA18, 27 BNA OSHC at 1256. Consequently, the Ballston Spa citation related to a number of deficiencies that had "been meaningfully reduced." SPA18, 27 BNA OSHC at 1256. In other words, the permit-required confined-space violations were not substantially similar.

Turning next to the lockout/tagout procedures, the Commission said that Angelica Textile's Edison citation "demonstrated a comprehensive failure to comply with its LOTO responsibilities" because it "involved a failure to have machine-specific and site-specific LOTO procedures." SPA18–SPA19, 27 BNA OSHC at 1256–57. But at Ballston Spa, "Angelica ha[d] established procedures specific to the machines in its . . . facility." SPA19, 27 BNA OSHC at 1257. So that violation turned not on the absence of "comprehensive procedures," but, by contrast, on "only two types of discrete deficiencies in [Angelica Textile]'s machine-specific procedures." SPA19, 27 BNA OSHC at 1257. As before, the violations were not, in the

Commission's view, substantially similar. And so the later violation was not repeated. SPA20, 27 BNA OSHC at 1257.

"Substantially similar"—like many legal standards—sounds exacting but is fluid in practice. Because one person's substantially similar may be another's substantially different, the standard mandates deference to the Commission's fact-finding on the issue. 3 Steven A. Childress & Martha S. Davis, Federal Standards of Review § 15.04, at 15-26 (4th ed. 2010) ("reviewing courts do give a considerable degree of deference to agency factfinding, although *considerable* admits a fairly wide range of deference"). Indeed, the Occupational Safety and Health Act's requirement that the Commission's factual findings be conclusive if supported by substantial evidence on the record would mean little if every petition for review unlocked a fact-finding do-over in court of appeals. *See* OSH Act § 11(a), 29 U.S.C. § 660(a); *see also* BNA, Occupational Safety and Health Law § 12.III.B, at 466 (4th ed. 2018) ("If the Commission sets forth the basis for its factual findings and those findings have support in the record, the reviewing court allows the Commission considerable latitude and discretion in arriving at those findings and drawing inferences from them."). Even if this

court "might reach a different result in a proceeding *de novo*, [it] must affirm the decision of the Commission unless it is not supported by substantial evidence." *A. Schonbek & Co. v. Donovan*, 646 F.2d 799, 800 (2d Cir. 1981).

For that reason, "reviewing courts are inclined to allow the administrators to proceed when the decisionmaking is at all reasonable or reasoned." 3 Steven A. Childress & Martha S. Davis, Federal Standards of Review § 15.04, at 15-26. And the Commission's decision exceeded that threshold when it provided a reasoned basis for its decision and explained that the Edison violations, which stemmed from "a nearly complete failure to comply," were not substantially similar to the Ballston Spa violations, which involved "minimal deficiencies."

> In these circumstances, the record does not show that Angelica's prior violations, which reflect what had been a nearly complete failure to comply, are substantially similar to the current violations; rather, the evidence shows that the violations took place under disparate conditions. Indeed, the Secretary established only minimal deficiencies here, reflecting that after those prior violations, Angelica took affirmative steps to achieve compliance and avoid similar violations in the future.

SPA20, 27 BNA OSHC at 1257.

True, the Commission might have found that the violations were substantially similar. That's an example of the flexibility that comes into play with the deference due to the Commission's role as a fact finder. But the Commission had a good and articulated reason for not finding a repeated violation. Because the penalty for a repeated violation is different from the penalty for a serious one, "'substantially similar' must be defined sufficiently narrowly." *Caterpillar, Inc. v. Herman*, 154 F.3d 400, 403 (7th Cir. 1998). Properly understood, a repeated violation (and the increased penalty that goes with it) should be found only when "the citation for the first violation placed the employer on reasonable notice of the need to take steps to prevent the second violation." 154 F.3d at 403. Angelica Textile took those steps, which undercuts the basis for a repeated violation and an increased penalty.

Angelica Textile had been cited in Edison for what the Commission called a "nearly complete failure to comply." SPA20, 27 BNA OSHC at 1257. But then Angelica Textile "took affirmative steps to achieve compliance." SPA20, 27 BNA OSHC at 1257. That meant that the Ballston Spa violations were "minimal deficiencies" "under

disparate conditions." SPA20, 27 BNA OSHC at 1257. Seen in this way, classifying the Ballston Spa violations as serious—and not as repeated—is consistent with the scheme set out in the Occupational Safety and Health Act, under which a repeated violation is based on the employer's having been placed on notice by the earlier violation and then not taking measures to make sure that the same thing does not happen again.

* * *

The Secretary's contrary arguments are not persuasive.

To begin, this is not an instance in which the Commission refused to apply its *Potlatch* test for whether a violation is repeated. As has been seen, the Commission applied its *Potlatch* burden-shifting framework. SPA15–SPA16, 27 BNA OSHC at 1254–55. The Commission shifted the burden to the employer to show that the violations were not substantially similar. SPA15–SPA16, 27 BNA OSHC at 1254–55. The Commission found that the employer, Angelica Textile, did that. SPA16, 27 BNA OSHC at 1255.

At bottom, the Secretary's argument is that he disagrees with the Commission's finding that the violations are not repeated (i.e.,

substantially similar). But Congress charged the Commission—not the Secretary—with finding facts. *See* OSH Act §§ 10(c), 11(a), 29 U.S.C. §§ 659(c), 660(a). And, as has been seen, the Commission's finding that the violations are not substantially similar is a reasonable interpretation of the items charged in the citations. Viewed in this light, there is no basis to say that the Commission either was overruling *Potlatch* or arbitrarily (and capriciously) was refusing to apply to it.

Moreover, the Commission's decision is consistent with the *Chevron/Auer* line of authority. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984); *Auer v. Robbins*, 519 U.S. 452 (1997). The Commission must follow the Secretary's reasonable interpretation of an ambiguity in OSHA regulations. *See Martin v. OSHRC*, 499 U.S. 144, 152 (1991). But that does not mean that the Commission must defer to the Secretary's interpretation of an administrative record when it is finding facts. Finding facts is not the same thing as interpreting an ambiguous statute or regulation. Indeed, requiring the Commission to follow the Secretary's interpretation of the record would be at odds with the Occupational Safety and Health Act, which vests fact-finding in the

Commission. *See* OSH Act §§ 11(a), 10(c), 29 U.S.C. §§ 659(c), 660(a).

The Secretary's blinkered focus on the supposed hazard arising from the violations is no help in assaying whether the violations are substantially similar. On the high level of generality suggested by the Secretary, all violations have to do with the dangers to employees entering tunnel washers. And at that level, the test for whether violations are substantially similar would be meaningless because all violations—whether big or small—would be the same because the generalized hazard is the same. Under the circumstances, the Commission properly focused on the violations themselves—and not on a common hazard—when finding that they are not substantially similar.

The Commission's finding that the violations are not substantially similar is a reasonable interpretation supported by substantial evidence on the administrative record considered as a whole. As a consequence, no basis exists to set aside the Commission's finding that the violations are not repeated.

## CONCLUSION

The court does not have subject-matter jurisdiction over the Secretary's petition, which seeks to reclassify two violations from serious to repeated. The only consequence of the reclassification would be a larger monetary penalty, which would not be collected because Angelica Textile Services received a discharge in bankruptcy. Because the penalty would not be collected, the petition is moot.

Moreover, the Commission properly classified the two violations as serious. The Commission's classifying the violations as serious is a finding of fact that is supported by substantial evidence on the record considered as a whole.

This court should dismiss the petition as moot. In the alternative, this court should deny the petition.

Dated: February 28, 2020

Charles D. Cole, Jr.
Newman Myers Kreines Harris, P.C.
Court-Appointed Amicus Curiae
40 Wall Street
New York, New York 10005-1335
212-619-4350
dcole@newmanmyers.com

**CERTIFICATE OF COMPLIANCE**

The brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 5102 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point CG Times.

Charles D. Cole, Jr.
Newman Myers Kreines Harris, P.C.